UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS WILLIAM DIAL,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:25-cv-01760-CKD<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. The parties have consented to magistrate judge jurisdiction. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1971, applied for DIB and SSI on July 6, 2022, alleging disability beginning November 13, 2020. Administrative Transcript ("AT") 17, 28. The alleged onset date was later amended to October 1, 2022. AT 17. Plaintiff stated that he was unable to work due to depression, PTSD, back injury, knee injuries, paranoia, vision loss, and hallucinations. AT 64. At

the June 25, 2024 hearing on his claim, plaintiff testified that he stopped working in 2020 when he was employed as a truck driver hauling landscape material. AT 43. He testified that could not work because he experienced constant pain in his knee and back, had gained a lot of weight, and suffered from severe depression and periods of rage. AT 44. On August 9, 2024, an Administrative Law Judge (ALJ) issued a decision finding plaintiff not disabled between October 1, 2022 and the date of the decision. AT 17-30. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.
>
> 2. The claimant has not engaged in substantial gainful activity since October 1, 2022, the amended alleged onset date.
>
> 3. The claimant has the following severe impairments: obesity, hypothyroidism, hypertension, tricompartmental chondrosis (February 2024), major depressive disorder, and generalized anxiety disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the claimant has had the residual functional capacity to perform light work except he can occasionally climb, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to respiratory irritants, and no work at unprotected heights or around hazards. He is capable of simple tasks, occasional interaction with supervisors, coworkers and the public, no collaborative work on a team, and no production paced work.
>
> 6. The claimant is unable to perform past relevant work.
>
> 7. The claimant was born [in 1971] and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.
>
> 8. The claimant has at least a high-school education.
>
> 9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2022, through the date of this decision.

AT 19-29.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in discounting plaintiff's allegations of mental dysfunction; (2) the ALJ failed in evaluating the medical opinion of the consultative psychologist; and (3) the ALJ failed to resolve apparent inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Credibility

Plaintiff argued that the ALJ erred in not finding plaintiff's statements about his mental symptoms fully credible. Defendant argues that the ALJ used the proper process and provided proper reasons, such that the court should defer to the ALJ's credibility determination.

As summarized by the ALJ, plaintiff testified that

> [h]e is withdrawn from socializing [and] does not follow written instructions, but he can follow spoken instructions fairly well depending on the length of the instructions. . . . He hears voices when he goes out in public, and he has depression/PTSD that causes uncontrollable emotions such as anger and uncontrollable crying that causes him to withdraw from any social contact.
>
> . . .
>
> [H]e also suffers from severe depression, noting that he received treatment from July 2023 through February 2024 when the psychiatric department closed. He testified that he does take medication and noted that it does help maintain his symptoms.

AT 23; see AT 44, 48-50, 57-58 (hearing testimony), 303-310 (2002 function report).

The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AT 24. The ALJ found plaintiff to have some level of mental impairment, accounting for this by limiting him to simple tasks and few interactions in the RFC. However, based on "equivocal subjective reports, equivocal examination findings, and minimal treatment," the ALJ found only moderate restrictions in social interactions. AT 26.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).

When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert, 980 F.3d at 1277–78. This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" Lambert, 980 F.3d at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. Id. at 1277–78.

Here, the ALJ determined that major depressive disorder and generalized anxiety disorder were severe impairments. However, the ALJ found the intensity, persistence, and limiting effects of these impairments not as great as plaintiff alleged, citing "routine conservative treatment" for depression and anxiety, "objective clinical and diagnostic findings" that did not support more a more restrictive RFC, and the absence of a supporting medical opinion from an examining or treating physician. AT 26.

As to objective clinical findings, the ALJ noted that there was evidence of "some emotional

lability" (see AT 428) but also largely normal mental status examination findings. AT 25-26. The ALJ noted that in October 2022, close to the alleged onset date, plaintiff "reported that he is not receiving mental health treatment and he is not prescribed psychiatric medication." AT 26. The ALJ also noted evidence of "routine conservative treatment" for anxiety and depression, citing medical notes indicating that plaintiff was taking Effexor for mental issues while largely focused on physical complaints. AT 26. The ALJ relied on the opinions of the State agency consultants who found plaintiff to have mild mental limitations. AT 27-28. The ALJ explained why he found plaintiff to have mild mental limitations except for interacting with others, which was moderately limited. AT 21-22. While consultative examiner Dr. Michelina Regazzi opined that plaintiff had marked-to-moderate mental impairments, the ALJ did not find her opinion persuasive, the subject of a separate claim.

Plaintiff argues that his treatment was not "routine and conservative" because his dosage of psychiatric medication was increased or changed based on how he responded to it. This is unpersuasive; adjusting a patient's medication is routine. Moreover, plaintiff's relatively limited treatment for mental issues can reasonably be described as conservative. See AT 353 (Dr. Regazzi note in October 2022 that plaintiff had never been admitted to a psychiatric facility, had never been in counseling or therapy, and had not been prescribed psychiatric medication).

Because the ALJ used the proper process and provided proper reasons, the court defers to the ALJ's credibility determination as to mental symptoms.

B. Medical Opinion

Plaintiff claims the ALJ erred in discounting the opinion of consultative examiner Dr. Regazzi, who examined plaintiff in October 2022. See AT 352-356.

Dr. Regazzi found plaintiff moderately to markedly impaired in a number of mental functional areas. The ALJ wrote: "This opinion is not persuasive because it is not supported by the treatment notes and it is not consistent with the medical evidence as a whole. Dr. Regazzi did not review any medical records and appears to have based her opinion entirely on the claimant's subjective complaints." AT 27.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct

RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." Sam-Chankhiao v. Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v. Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

As to supportability, the ALJ found that Dr. Regazzi's opined limitations were not supported by her treatment notes. Dr. Regazzi observed plaintiff to be "pleasant and cooperative throughout the exam." AT 353. In her mental status exam, she found plaintiff's attitude, eye contact, orientation, intelligence, attention, concentration, fund of knowledge, memory, judgment, insight, affect, and thought process to be normal or unremarkable. AT 355. She noted that his

mood was "depressed" and his affect was "congruent with mood." AT 355. She also noted that, as of October 11, 2022, a few weeks after the alleged onset date, plaintiff was not receiving mental health treatment, was not prescribed psychiatric medication, had never been in counseling or psychotherapy, and had never been admitted to a psychiatric facility. AT 353-54. Dr. Regazzi noted that plaintiff worked as a truck driver for 19 years until March 2020, when he was "having difficulty passing the DOT medical exam, due to his poor vision and high blood pressure"; she did not mention any mental issues related to his job loss. AT 354. An ALJ is not required to credit a conclusory opinion supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see e.g., Ross v. Comm'r of Soc. Sec. Admin, 2023 WL 2341342, at *2 (9th Cir. Mar. 2023) (ALJ properly discounted medical opinion where marked limitations were unsupported by "mostly normal" mental status exam and inconsistent with other normal psychiatric findings). The ALJ reasonably found Dr. Regazzi's opined marked and moderate limitations in mental functioning to be unsupported by her treatment notes.

As to consistency, the ALJ found that Dr. Regazzi's opinion was "not consistent with the medical evidence as a whole." The ALJ added that Dr. Regazzi "did not review any medical records and appears to have based her opinion entirely on the claimant's subjective complaints."[1] Plaintiff argues that this reasoning is impermissibly vague, as the ALJ did not explain what evidence was inconsistent with Dr. Regazzi's opinion. Even so, any error in this regard is harmless, as the ALJ explained elsewhere in the decision why she found plaintiff to have mostly mild mental limitations, citing record evidence and relying on two medical opinions which arrived at the same conclusion. AT 21-22, 25-26, 27-28. The ALJ's decision provides "sufficient rationale for a reviewing adjudicator or court" to understand why the ALJ found Dr. Regazzi's opinion inconsistent with specific medical evidence. See Sam-Chankhiao, 2022 WL 4226170, at *3. For example, the ALJ noted that plaintiff received "routine conservative treatment" for depression and anxiety and had largely normal mental status exam findings. AT 25-26. Given the scant objective evidence of debilitating mental symptoms, the ALJ gave plaintiff "the benefit of

---

[1] Plaintiff argues this is speculative, and the court makes no finding on whether Dr. Regazzi reviewed any medical records in preparing her report.

the doubt" in finding his mental impairments severe. AT 28. See Woods v. Kijakazi, 32 F.4th 785, 794 (9th Cir. 2022) (medical opinion unpersuasive where inconsistent with treating record, exam findings, work activities, daily activities, and conservative treatment). Plaintiff has not shown harmful error on this basis.

C. Vocational Expert Testimony

Plaintiff claims that, at step five, the ALJ did not resolve multiple apparent inconsistencies between the VE's testimony and the Dictionary of Occupational Titles (DOT). Based on VE testimony, the ALJ found that plaintiff could perform the requirements of the following jobs: routing clerk, small parts, assembler, and agricultural products assembler. AT 29. Plaintiff asserts that all these occupations require a significant pace to sort or assemble products on a large scale, and plaintiff's RFC precluded "production paced work." Plaintiff argues that the ALJ erroneously failed to resolve apparent inconsistencies as to all three jobs.

The United States Department of Labor, Employment & Training Administration's Dictionary of Occupational Titles ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1); see Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995) (reliance on the DOT acts as a presumption that may be rebutted by the testimony of a vocational expert); see also Social Security Ruling 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy). Under Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015), "[w]hen there is an apparent conflict between the [VE's] testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency." In order to trigger the ALJ's duty to inquire, the conflict between the VE's testimony and the DOT's job description must be "obvious or apparent." Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016).

Here, the VE testified that plaintiff could perform the three jobs listed above. The ALJ asked whether "the last two jobs you identified" (small parts assembler and agricultural sorter) were "production paced" jobs. AT 59. The VE testified that they were not and explained why. AT 59-61. The ALJ relied on this testimony, and it is not obvious that more was required. The VE also testified that plaintiff could work as a routing clerk. The ALJ found that plaintiff could perform all three.

Asked for alternatives by the ALJ, the VE testified that plaintiff could perform two other jobs: office helper and mail sorter. AT 61. The VE testified that these jobs did not require "collaborative team work," as precluded by the RFC. AT 61. Plaintiff argues that the VE did not resolve apparent conflicts with the DOT as to these two jobs, either. A mail sorter has a reasoning level of 3, see DOT No. 209.687-026, 1991 WL 671813, and plaintiff has an RFC for simple tasks. Defendant acknowledges that the ALJ did not resolve an apparent conflict as to this job under Zavalin.

As to the office helper job, plaintiff argues that it requires "collaborative teamwork" despite the VE's testimony to the contrary. See DOT 239.567-010, 1991 WL 672232. But plaintiff has not shown that the ALJ failed to resolve an apparent conflict as to this job. According to the DOT, an office helper's duties include furnishing workers with clerical supplies, distributing mail, delivering messages, collecting and distributing paperwork, and delivering things between departments. These tasks do not obviously involve collaborative teamwork, only passing interaction with coworkers. Moreover, when asked, the VE testified that the job did not require collaborative teamwork, effectively resolving the issue. See K.G. v. Kijakazi, 2023 WL 4316790, *3 (C.D. Cal. May 5, 2023) ("[C]ourts will uphold an ALJ's reliance on a vocational expert's testimony unless the testimony was so feeble or contradicted as to fail to surmount the relatively low 'substantial evidence bar.") (collecting cases) (citation modified). As substantial evidence supports the finding that plaintiff could perform at least one job in the national economy, any error as to the remaining jobs is harmless. Plaintiff is entitled to summary judgment on this claim.

////

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted; and

3. Judgment is entered for the Commissioner.

Dated: September 18, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/dial1760.bothdibssi.ckd